G. A. NORTHCOTT *and* L. L. WILSON *v.* MARGARET J. NEWMAN NIEMAN *et al.*

(No. 8252)

Submitted February 11, 1936. Decided March 25, 1936.

*L. W. Blankenship* and *J. J. N. Quinlan,* for appellants.
*Marcum & Gibson,* for appellees.

LITZ, JUDGE:

This is an appeal from a decree enjoining an action on an indemnifying bond.

On June 1, 1921, defendant, Margaret J. Newman Nieman (then Newman) leased to Sixth Avenue Office Building, a corporation, a lot of land owned by her in the city of Huntington, for a period of 25 years. The lease contract required the lessor to convey the property to the lessee at the termination of the lease period, without further consideration, providing the lessee had paid the rentals in accordance with the terms of the lease. On July 20, 1923, Sixth Avenue Office Building transferred and assigned the lease to G. Towns Davis and B.

T. Davis, who, on October 1, 1923, transferred and assigned the same to West Virginia & Kentucky Insurance Agency, a corporation. By deed dated April 8, 1924, defendant, Margaret J. Newman Nieman (then Newman), West Virginia & Kentucky Insurance Agency and others conveyed said lot of land to F. M. Livezey, trustee, to secure the payment of nineteen promissory notes evidencing a loan of $30,000.00 (and interest thereon) from The Western & Southern Life Insurance Company, a corporation, of Cincinnati, Ohio, signed by West Virginia & Kentucky Insurance Agency, as maker, indorsed by George I. Neal, Frank P. Slack and J. W. Slack, and payable to the order of The Western & Southern Life Insurance Company; and *"to secure any renewal or renewals of said notes, or any of them either in whole or in part, * * *."* At the time of the execution of the deed of trust by the defendant, Margaret J. Newman Nieman, and as a part of the same transaction, West Virginia & Kentucky Insurance Agency, as principal, and George I. Neal, L. L. Wilson, G. A. Northcott, S. T. Slack and J. W. Slack, as sureties, executed a bond, indemnifying her against loss or damage because of the execution of the deed of trust. The bond, after reciting the foregoing facts, provides: "Now, therefore, if the above bound principal (West Virginia & Kentucky Insurance Agency) shall well and truly pay and discharge said notes evidencing the principal of such loan, together with the interest notes above mentioned, when and as the same become due and payable, and shall well and truly and faithfully perform all of the covenants, agreements and conditions contained in the trust deed aforesaid, and on its part to be kept and performed, *and shall fully indemnify and save harmless against loss or damage the said Margaret J. Newman because of the execution of such deed of trust,* then this obligation shall be void; otherwise, to remain in full force and effect." It contained a further provision that in the event of a sale of the property under the deed of trust, resulting in the loss to Mrs. Nieman of the rentals to which she would be entitled by virtue of the lease, her damages under the

bond should be fixed at $30,000.00. All of the obligors were stockholders of West Virginia & Kentucky Insurance Agency and all except Wilson were also officers of the corporation. The $30.000.00 was borrowed and used for the purpose of erecting a building upon the leased property. All of the notes secured by the deed of trust except the note for $18,000.00, payable five years from date, having been paid, the defendant, Margaret J. New-man Nieman (then Newman), West Virginia & Kentucky Insurance Agency, The Western & Southern Life Insurance Company, and other parties who signed the deed of trust, executed a writing April 8, 1929, extending payment of the $18,000.00, evidenced by the unpaid note, as follows: $1800.00 thereof until April 8, 1930; $1800.00 thereof until April 8, 1931; $1800.00 thereof until April 8, 1932; $1800.00 thereof until April 8, 1933; and $10,800.00 thereof until April 8, 1934. George I. Neal, Frank P. Slack and J. W. Slack, indorsers of the $18,000.00 note, also agreed to the extension. Northcott and Wilson declined to agree. West Virginia & Kentucky Insurance Agency having defaulted in the payment of the greater portion of $18,000.00, the trustee sold the property under the deed of trust to The Western & Southern Life Insurance Company for $14,200.00. Thereafter, the defendant, Margaret J. Newman Nieman, instituted an action in the circuit court of Cabell County on the indemnity bond against the West Virginia & Kentucky Insurance Agency, George I. Neal, Frank P. Slack, J. W. Slack, G. A. Northcott and L. L. Wilson. Thereupon, G. A. Northcott and L. L. Wilson brought this suit to enjoin the prosecution of the law action because Mrs. Nieman had, without their consent, agreed to extend the time of payment of the debt evidenced by the $18,000.00 note.

The circuit court found that Northcott and Wilson had declined to approve the extension agreement and held that Mrs. Nieman, by joining therein, had released them from all liability under the indemnifying bond. The court apparently reached this conclusion by reasoning: (1) that the bond indemnified Mrs. Nieman against such

loss only as she might sustain by having executed the deed of trust; and (2) that the extension of time for payment of the debt evidenced by the $18,000.00 note was not authorized by the provisions of the deed of trust securing renewals of the note. If the extension was authorized by the deed of trust, it would seem that the subsequent agreement of Mrs. Nieman thereto was merely an act of supererogation, without material bearing upon the enforceability of the bond. In *Prussing* v. *Lancaster,* 234 Ill. 462, 84 N. E. 1062, Nimrod Lancaster executed a deed of trust on his real estate to secure the payment of a note for $58,500.00 made by Springer. The property was leased by Lancaster to Springer, who erected thirteen three-story dwelling houses thereon. Lancaster indorsed on the deed of trust: "I hereby agree that the said Charles E. Springer may have the loan mentioned within this trust deed, or any part of the said loan, *renewed* from time to time as he may see fit, and this trust deed will still act to secure the said loan and the principal note or notes in case of the *renewal* of the same or any part of it." In holding that the extension of time for the payment of the note was within the meaning of the indorsement, the court said: "This agreement was coupled with an interest, and was not revoked by the death of Ninrod Lancaster (*Benneson* v. *Savage,* 130 Ill. 352, 22 N. E. 838), and fully authorized the *extension* of the time of payment of the promissory note secured by said trust deed without affecting the lien of the trust deed." In *First National Bank of Redondo* v. *Spalding,* 177 Cal. 217, 170 Pac. 407, Spalding guaranteed the payment of certain notes by writing authorizing an extension of time to the maker. In holding that the execution of new notes by the makers, containing provisions different from the original notes, did not release the guaranty, the court said: "The authorization given by Mr. Spalding for *extensions of time* to the maker * * * was in the broadest and most unequivocal language. * * * The expressed consent to the extensions of time did not specify when nor the manner in which those extensions

were to be made and while the method adopted is not to be highly commended its use was no more injurious to the guarantor than a more orderly procedure would have been." *Rodabaugh* v. *Kauffman*, 53 Cal. App. 676, 200 Pac. 747, involved a guaranty, guaranteeing the payment of $2500.00 of a note for $5,000.00, and *renewals* thereof. In holding that the *extension* of time of payment of the note did not release the guarantor, the court said: "The appellant guaranteed payment to the extent of $2500.00, the guaranty to remain in force 'during all *renewals* of said indebtedness and until at least $2,500.00 of said debt is paid.' * * * *So far as the rights of a guarantor are concerned, there is no essential difference between an extension of the time of payment of the old note and renewal. First National Bank* v. *Spalding,* 177 Cal. 217, 222, 170 Pac. 407." *Anderson* v. *Trueman*, 100 Fla. 727, 130 So. 12, involved a note, attached to a mortgage, which stated: "We and each of us consent that the amount of this note or any part hereof may be *extended* without further notice." In holding that the *renewals* of the note did not release the mortgage, the court said: "From an examination of the record, we cannot escape the conclusion that the mortgage secured the payment of a debt of $22,500.00 of which the note was the mere evidence; that the original note attached to the mortgage, a portion of which is here quoted, authorized the renewal of all or any part thereof without notice; and that all subsequent extensions were nothing more than renewal notes to evidence the secured indebtedness. They effected no change in the form, amount, or material substance of the indebtedness and were authorized by the terms of the note which was by apt words made a part of the mortgage." The giving of a new note for an old one which had become due, the makers of the two notes being the same, "will be regarded merely as extension of the credit upon the debt; * * * ." *Merchants National Bank* v. *Good*, 21 W. Va. 455, 466.

The plaintiffs contracted to indemnify Mrs. Nieman as surety of West Virginia & Kentucky Insurance

Agency, and were not released by the extension of time for payment of the principal obligation.

· "An extension of time for payment or performance of the principal obligation does not release an indemnitor against loss from liability, especially where he consents thereto; and this rule has been held to apply, even though the extension of time is given without the indemnitor's consent." 31 C. J., p. 445. "It appears to be the general rule that one who agrees to indemnify a surety or guarantor on a contract is not released from liability by an extension of the time for payment or performance on the contract, although this extension is given without his knowledge or consent. Thus, it is held that one who contracts to indemnify a surety or guarantor on a note is not freed from his obligation by a renewal of the note, or the issuance of a new one by the same parties, when the original note is due, or by any other arrangement extending the time for payment, although this is done without his knowledge or consent." 43 A. L. R., p. 1368.

The rule of *strictissimi juris* does not apply to paid or interested guarantors or sureties. *Richardson* v. *Draper,* 87 N. Y. 337; *First National Bank* v. *Livermore,* 90 Kan. 395, 133 Pac. 734, 47 L. R. A. (N. S.) 274; *Trust Co.* v. *Donk,* (Mo. Sup.) 178 S. W. 113, 116; *Chowning* v. *First State Bank,* 102 Okla. 4, 225 Pac. 715; *North Texas Bank* v. *Thompson,* (Tex. Civ. App.) 23 S. W. (2d) 494; *In re Cancelmo's Estate,* 308 Pa. 178, 162 Atl. 454; *Bank of East Conemaugh* v. *Davies,* 315 Pa. 59, 172 Atl. 296; *Matchett* v. *Assembly & Summer School Ass'n.,* 185 Ind. 128, 113 N. E. 1; *Waddle* v. *Bird,* 126 Kan. 255, 267 Pac. 974. In *In re Cancelmo's Estate,* cited, decedent, while a shareholder and officer of a corporation, guaranteed the "payment at maturity of any and all sums" up to $35,-000.00 which the corporation "may in any way owe" to a bank. The bank renewed notes of the corporation without consent of decedent. The corporation having defaulted, the bank filed its claim against the estate of the surety. The court held that the renewal of two notes several times over a period of six months without the sure-

ty's consent came within terms of the guaranty, although the authority to renew was not expressly given. In considering the rule of construction to be applied, the court observed: "The decedent was not simply a surety, but he had a personal interest in the company whose obligation he was guaranteeing since he was one of its officers and stockholders. The law is not so tender to him as to one who was not being personally obliged by the loan of the bank's money. * * * This is but a further application of the well-known principle that the rule of strict construction is to be applied only in favor of a gratuitious surety and not a compensated surety."

We are, therefore, of opinion that defendant, Margaret J. Newman Nieman, did not, by agreeing to an extension of the time for payment of the $18,000.00, release the plaintiffs from liability under the indemnity bond.

What shall be the measure of recovery under the bond which fixes the damages in the event of sale under the deed of trust at $30,000.00? The purpose of the bond, as stated therein, is to indemnify Mrs. Nieman against loss or damage because of the execution of the deed of trust. As the damages of Mrs. Nieman in event of sale of the property under the deed of trust depended upon the time of sale, we think the provision in the bond fixing the amount at $30,000.00 is necessarily a penalty, to the benefit whereof, as a penalty, she is not entitled under the circumstances of the case. We are, therefore, of opinion that her damages should be fixed at the amount of the unpaid balance of the debt at the time the property was sold, and that for said amount the appellees are liable to her.

The case will, therefore, be remanded for the purpose of determining that amount and entering judgment therefor.

*Reversed and remanded.*